The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Gregory M. Willis, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * *
In addition to the evidence accepted at the hearing, the depositions of Dr. Wendell Moses and Dr. Ronald Neimkin, the affidavits of plaintiff and David McElrath, and the medical records attached to defendant's contentions of 24 August 1995 are hereby made a part of the record of this case; and regarding the depositions, all objections raised by counsel are hereby OVERRULED.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with defendant-employer employing three or more regular employees.
2. At all times pertinent hereto, there was an employee-employer relationship between plaintiff and defendant.
3. Defendant is self-insured under the provisions of the North Carolina Workers' Compensation Act.
4. Plaintiff's average weekly wage can be determined by a wage chart (I.C. Form 22) introduced by the parties at the hearing and marked as Stipulated Exhibit #1.
5. Plaintiff did not work for the defendant from 26 May 1994 through 20 November 1994.
6. While out of work, plaintiff received $135.00 per week in short-term disability compensation, pursuant to an insurance policy for which plaintiff paid 41% of the insurance premium.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the original hearing on 5 May 1995, plaintiff was 37 years old and had worked for defendant-employer, who makes furniture, for approximately fourteen years. Plaintiff has completed high school and taken two years of marketing and management courses at a community college.
2. As of 5 May 1995, plaintiff was again working for defendant-employer, now in the gluing department. Plaintiff had returned to work on 21 November 1994 after being out of work since 24 May 1994.
3. Defendant-employer knew of plaintiff's arm problems prior to 22 March 1993. At that time plaintiff was being treated by Dr. Moses. Eventually, Dr. Moses referred her to Dr. Ronald J. Neimkin on 15 April 1994 who finally diagnosed plaintiff's condition as bilateral medial epicondylitis.
4. On 10 January 1995 Dr. Neimkin gave plaintiff a permanent partial disability rating of ten percent (10%) to her right arm and the five percent (5%) to the left arm.
5. Prior to leaving work on 24 May 1994, plaintiff worked for defendant-employer as a molder. Her duties in that position included the shaping of different pieces of wood. This required the changing of heads, each weighing between twenty and forty-five pounds, approximately six or seven times per day. This position also required the repeated lifting of pieces of wood, varying in size, and placing them in a hopper. Plaintiff would then inspect the pieces, which involved the turning over of the pieces of wood, followed by plaintiff restacking them to the side. This repeated motion of lifting and placing would continue throughout an eight hour shift. Plaintiff held this position with defendant-employer as a molder for approximately four (4) years.
6. Plaintiff's description of the repetitive nature of her duties as a molder was credible and was corroborated by three (3) witnesses: Ms. Penny Harper, Mr. Jeff Watkins, and Ms. Cindy Ramsey.
7. The Full Commission finds as fact that plaintiff's position with defendant-employer as a molder was a repetitive motion job.
8. Although while working for defendant-employer in her position as a molder plaintiff was not operating under formal production quotas, she was under substantial pressure to work constantly at whatever pace it took to get the work done over the course of a shift.
9. Plaintiff's repetitive duties as a molder for defendant-employer caused or significantly contributed to her development of the occupational disease, bilateral medial epicondylitis.
10. Plaintiff's repetitive duties as a molder for defendant-employer exposed her to an increased risk of developing the occupational disease, bilateral medial epicondylitis than members of the general public not so employed.
11. As the result of her occupational disease, bilateral medial epicondylitis, plaintiff was unable to earn wages in her position as a molder with defendant-employer or in any other employment for the period 24 May 1994 through 20 November 1994.
12. As the result of her occupational disease bilateral medial epicondylitis, plaintiff has sustained a ten percent (10%) permanent partial disability to her right arm and a five percent (5%) permanent partial disability to her left arm.
13. Plaintiff was paid short-term disability benefits during the period she was out of work due to her occupational disease at the rate of $135.00 per week for a total of $3,392.29. Plaintiff contributed $1.40 per week towards the premium for this short-term disability plan, which constituted forty-one percent (41%) of the total costs.
14. As of 24 May 1994, plaintiff's average weekly wage was $372.00 per week, yielding a compensation rate of $248.12.
* * * * * * * * * * *
Based upon the foregoing and findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. As of 24 May 1994, plaintiff's average weekly wage was $372.00 per week, yielding a compensation rate of $248.12. G.S. § 97-2(5).
2. As the result her position with defendant-employer as a molder, plaintiff developed the occupational disease bilateral medial epicondylitis. G.S. 97-53(13). Plaintiff's position and duties as a molder exposed her to an increased risk of developing said disease than members of the general public not so employed.Id.
3. As the result of her occupational disease, bilateral medial epicondylitis, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $248.12 per week for the period 26 May 1994 through 20 November 1994, subject to the attorney's fee and the credit for defendant provided herein. G.S. § 97-29.
4. As the result of her occupational disease, bilateral medial epicondylitis, plaintiff is entitled to be paid by defendant permanent partial disability compensation at the rate of $248.12 for a period of thirty-six weeks for the ten percent (10%) permanent partial disability to her right arm and the five percent (5%) permanent partial disability to her left hand, subject to the attorney's fee and credit for defendant provided herein. G.S. §97-31(13).
5. As the result of her occupational disease bilateral medial epicondylitis, plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred. G.S. § 97-25.
6. Defendant are entitled to a of fifty-nine percent (59%) for the short-term disability benefits paid to plaintiff during the period she was out of work form 24 May 1994 through 30 November 1994 in an amount totaling $2,001.45. G.S. § 97-42.
7. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) for his representation of plaintiff in this matter.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusion of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to the attorney's fee and credit provided below, defendant shall pay to plaintiff temporary total disability compensation at the rate of $248.12 for the period 24 May 1994 through 20 November 1994 as the result of plaintiff's occupational disease.
2. Subject to the attorney's fee and credit provided below, defendant shall pay to plaintiff permanent partial disability compensation for thirty-six (36) weeks for the ten percent (10%) permanent partial disability to her right arm and five percent (5%) permanent partial disability to her left arm as the result of her occupational disease.
3. Defendant shall pay all reasonable medical expenses related to plaintiff's occupational disease when bills for the same have been submitted to defendant and approved pursuant to procedures established by the Industrial Commission.
4. Defendant are entitled to a credit for fifty-nine percent (59%) of the short-term disability benefits paid to plaintiff during the period she was out of work form 24 May 1994 through 30 November 1994 in an amount totaling $2,001.45. G.S. § 97-42.
5. Defendant shall pay to counsel for plaintiff an attorney's fee of twenty-five percent (25%) of the amount compensation awarded above, after defendant's credit is taken. Said compensation having accrued, this fee shall be deducted therefrom and paid directly to counsel for plaintiff.
6. Each side shall pay their own costs, except that defendant shall pay an expert witness fee in the amount of $250.00 to Dr. Neiman and $250.00 to Dr. Moses.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ COY M. VANCE COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER